No. 15-2230

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

SIG SAUER, INC.,

Plaintiff-Appellant,

v.

THOMAS E. BRANDON, Acting Director, U.S. Bureau of Alcohol, Tobacco,
Firearms, and Explosives,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

BRIEF FOR APPELLEE

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney General*

DONALD FEITH
  *United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT
  (202) 514-0664
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530-0001*

TABLE OF CONTENTS

<u>Page:</u>

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF THE ISSUE.......................................................................1

PERTINENT STATUTES ..............................................................................1

STATEMENT OF THE CASE .......................................................................2

    I.      Statutory and Regulatory Background ...........................................2

    II.     Facts and Prior Proceedings..........................................................4

SUMMARY OF ARGUMENT........................................................................8

STANDARD OF REVIEW .............................................................................9

ARGUMENT ..................................................................................................9

    I.      ATF's Determination That Plaintiff Intended Its Prototype
          Part To Be Used Only as a Silencer Was Supported by
          Substantial Evidence in the Record ..............................................9

    II.     Plaintiff's Arguments Are Without Merit and Misunderstand
          Both the District Court's Decision and the Government's
          Position............................................................................................15

          A.    Plaintiff's reliance on *Crooker* is misplaced......................16

          B.    Plaintiff's contention that it intended its part to be
               used for anything other than a silencer is without basis ...............18

CONCLUSION ..............................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s):**

*Innovator Enters., Inc. v. Jones,*
    28 F. Supp. 3d 14 (D.D.C. 2014) ......................................................................18

*United States v. Crooker,*
    608 F.3d 94 (1st Cir. 2010)................................................... 7, 8, 10, 11, 16

*United States v. Oba,*
    448 F.2d 892 (9th Cir. 1971) .........................................................................2

*United States v. Syverson,*
    90 F.3d 227 (7th Cir. 1996) .................................................................. 17, 18

*Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson,*
    447 F.3d 68 (1st Cir. 2006).................................................................... 9, 19


**Statutes:**

Firearm Owners' Protection Act of 1986,
    Pub. L. No. 99-308, 100 Stat. 449 ..............................................................3

National Firearms Act:
    26 U.S.C. § 5801 *et seq.*..............................................................................2
    26 U.S.C. § 5811 .........................................................................................3
    26 U.S.C. § 5812 .........................................................................................3
    26 U.S.C. § 5821 .........................................................................................3
    26 U.S.C. § 5822 .........................................................................................3
    26 U.S.C. § 5841 .........................................................................................4
    26 U.S.C. § 5842 .........................................................................................4
    26 U.S.C. § 5845 .........................................................................................3
    26 U.S.C. § 5845(a)(7) .................................................................................2
    26 U.S.C. § 5871 .........................................................................................4

5 U.S.C. § 706(2)............................................................................... 9, 18

18 U.S.C. § 921(a)(24)..............................................................1, 3, 10, 15, 20

28 U.S.C. § 599A ...................................................................................................3

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

**Legislative Material:**

*Armor Piercing Ammunition and the Criminal Misuse and Availability of Machineguns and Silencers: Hearings on H.R. 641 and Related Bills Before the Subcomm. on Crime of the H. Comm. of the Judiciary*, 98th Cong. (1984) ........................ 2, 3

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331.

*See* Plaintiff's Appendix (App.) 119. The district court granted the government's

motion for summary judgment on September 24, 2015. Plaintiff's Addendum (Add.)

1, 2. Plaintiff filed a timely notice of appeal on October 15, 2015. App. 9. This Court

has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiff, a firearms manufacturer, submitted a prototype firearm to the Bureau

of Alcohol, Tobacco, Firearms and Explosives (ATF) for classification. The issue

before this Court is whether ATF's determination that plaintiff's prototype firearm

included a "silencer" within the meaning of federal law was supported by substantial

evidence in the record.

## PERTINENT STATUTES

Federal law defines a "silencer" as "any device for silencing, muffling, or

diminishing the report of a portable firearm, including any combination of parts,

designed or redesigned, and intended for use in assembling or fabricating a firearm

silencer or firearm muffler, and any part intended only for use in such assembly or

fabrication." 18 U.S.C. § 921(a)(24).

## STATEMENT OF THE CASE

### I.    Statutory and Regulatory Background

A. The National Firearms Act. 26 U.S.C. §§ 5801 *et seq.*, regulates certain classes of weapons "thought to be, in themselves, so amenable to antisocial use by private parties as to justify the strictest regulation." *United States v. Oba,* 448 F.2d 892, 897 (9th Cir. 1971). The Act applies to short-barreled shotguns and rifles, machineguns, destructive devices, and, as relevant here, "any silencer." 26 U.S.C. § 5845(a)(7).

The original definition of "silencer" in the 1968 Gun Control Act did not include parts used to assemble a silencer. Individuals were thus able to construct their own silencers from easily obtainable components. In response to growing concern regarding the assembly of silencers from such do-it-yourself kits, Congress held a series of hearings on the issue in the early 1980s. During its investigation, Congress heard testimony regarding frequent situations in which "one source supplies two pieces of aluminum tubing which by themselves would not be able to be used [as a silencer]. Another [source] supplies components which are eyelets, tubes of aluminum, and a small container." Armor Piercing Ammunition and the Criminal Misuse and Availability of Machineguns and Silencers: Hearings on H.R. 641 and Related Bills Before the Subcomm. on Crime of the H. Comm. of the Judiciary, 98th Congress, 1st Sess. 132 (1984) (testimony of Edward Owen, Chief, Firearms Technology Branch). As Congress was told, assembling a silencer from such parts was "a fairly simple matter" and could make a "very effective sound suppressor." *Id; see*

*also id.* at 156 ("[O]ne part might be sold at this table, and the man will be gracious enough to direct you to that table where the second part might be bought. He in turn, might direct you to the third table, where the third part might be purchased.") (testimony of John H. Tighe, Chief of Police, Pembroke Pines, Florida).

As a result of its investigation, Congress amended the definition of "silencer." *See* Firearm Owners' Protection Act of 1986, Pub. L. No. 99-308, 100 Stat. 449. Federal law thus defines "silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24); *see also* 26 U.S.C. § 5845 (importing definition of "silencer" into National Firearms Act).

B. The National Firearms Act imposes numerous requirements on firearms subject to the Act. Such weapons are subject to a $200 transfer tax, *see* 26 U.S.C. § 5811, and all transfers of such weapons require approval of the Secretary of Treasury, *id.* § 5812.[1] The Act further provides that the making of National Firearms Act weapons is prohibited unless approved by the Secretary of Treasury, and each maker must pay a $200 fee per weapon. *Id.* §§ 5821, 5822. National Firearms Act

---

[1] Although the statute refers to the Secretary of the Treasury, ATF is now a part of the Department of Justice, and the functions of the Secretary are performed by the Attorney General. 28 U.S.C. § 599A.

weapons must be registered and bear a serial number. *Id.* §§ 5841, 5842. Violation of these provisions carries substantial penalties. *Id.* § 5871.

## II. Facts and Prior Proceedings

A. Plaintiff Sig Sauer, Inc., is a federally licensed firearms manufacturer located in Newington, New Hampshire. App. 119. Plaintiff manufactures a wide range of firearms and components, including machine guns with removable silencers marketed to law enforcement and the military. *See* App. 48 (ATF 810) (describing plaintiff's submission of machine gun and removable silencer).

In April 2013, Sig Sauer submitted a sample firearm to ATF's Firearms Technology Branch for classification, asking that ATF confirm that the prototype would not be subject to the National Firearms Act. App. 20. Plaintiff's prototype firearm consisted of a short-barreled rifle combined with a part that plaintiff had previously used as the center core of the silencers it produced for the military. App. 23.[2] Plaintiff urged that the part attached to the rifle was intended to function as a "muzzle brake" used "to reduce the felt recoil of the firearm by directing the propellant gases perpendicular to the axis of the bore." App. 20. Plaintiff contended that the part would "not silence, muffle, or diminish the report of the firearm." *Id.*

ATF responded to plaintiff's submission, explaining that the prototype would be subject to regulation under the National Firearms Act because it included a part or

---

[2] The addition of the silencer part extended the rifle length such that the rifle no longer qualified as "short-barreled" under the National Firearms Act.

4

combination of parts intended to be assembled into a silencer. ATF reasoned that the item in question was not a muzzle brake, as plaintiff urged, but rather a "monolithic baffle core."[3] A monolithic baffle core forms the center part of a silencer and can easily be converted into a functioning silencer (and thus become a "device for silencing, muffling, or diminishing the report of a portable firearm") by the addition of an outer tube. App. 120; *see also* App. 203 (photograph of monolithic silencer cores).

Plaintiff requested that ATF reconsider its determination; plaintiff again argued that its firearm part was intended to reduce recoil and not muffle sound. App. 26. ATF rejected those arguments, stating that it found "no reason to amend [its] earlier findings." App. 39.

B. Dissatisfied with ATF's response, plaintiff filed suit in the United States District Court for the District of New Hampshire. App. 9. On agreement of the parties, the district court remanded the case to ATF. App. 40. On remand, ATF reaffirmed its classification. App. 63 (ATF 825).

Recognizing that plaintiff claimed it did not intend that its prototype part be used as a silencer, ATF explained that although a manufacturer's stated intent for a part was relevant, it was not determinative if evidence in the record contradicted the

---

[3] A "baffle" is a metal part, usually circular or cone shaped and slightly larger than a bullet, that separates the "expansion chambers" (which allow gases to disperse) inside the core of a silencer.

claimed intent. App. 52 (ATF 815). ATF determined that plaintiff's stated intent was undermined by the fact that the design features of plaintiff's firearm part were identical to those found in conventional silencer cores, and not those of a conventional muzzle brake. App. 62 (ATF 824). Indeed, as ATF noted, the prototype part plaintiff submitted to ATF was identical to the part used by plaintiff in manufacturing silencers for the military. App. 90-92 (ATF 852-54).

In response to plaintiff's contention that its prototype part reduced recoil and did not consistently reduce sound, ATF observed that silencer *parts* need not themselves reduce sound to be regulated as "silencers" under federal law. App. 50 (ATF 812). ATF further explained that incidental effects, such as reducing recoil, do not undermine the manufacturer's demonstrated intent that a part be combined with an outer tube for use as a silencer. App. 52 (ATF 815). As ATF noted, plaintiff's prototype part was capable of performing numerous functions, including operating a as a doorstop. *Id.*

Following ATF's decision, plaintiff submitted additional documentation to ATF, including the declarations of a design engineer and plaintiff's general counsel. App. 96-117. ATF declined to modify its classification. App. 118 (ATF 885).

C. On cross motions for summary judgment, the district court upheld ATF's classification determination. Add. 2. Noting that plaintiff's "arguments are somewhat difficult to disentangle," the court first addressed plaintiff's argument that ATF used an incorrect test to determine whether plaintiff's firearm part was a "silencer" within

the meaning of the National Firearms Act. Add. 11. Relying on this Court's decision in *United States v. Crooker*, 608 F.3d 94, 97 (1st Cir. 2010), the district court explained that the proper test for determining whether a part qualified as a silencer was based on the subjective intent of the manufacturer. Add. 12. The court then held that ATF had, in fact, looked to plaintiff's subjective intent. As the district court explained, this conclusion was not undermined by the fact that ATF also looked at the prototype part's design features, because "ATF did so merely to explain why it was not obligated to defer to a manufacturer's statement of intention when that statement is contradicted by objective evidence." Add. 13.

The court next turned to whether ATF's finding that plaintiff intended its prototype part to be used only as a silencer was supported by substantial evidence in the record. The court explained that ATF's classification determination "require[d] expertise that is well within the ATF's grasp [and] its conclusions are entitled to substantial deference from a reviewing court." Add. 16.

The district court held that "ATF acted rationally in concluding that Sig Sauer intended the baffle core to be used only as a silencer part because the agency pointed to substantial evidence in the record to support its determination." Add. 15. Specifically, the court noted that "the baffle core is an essential silencer component . . . identical in design and dimension to the baffle core contained inside a removable Sig Sauer silencer." *Id.* In rejecting plaintiff's contention that it intended its prototype part to be used as a muzzle brake, the court observed that plaintiff "proposed to

7

attach the baffle core to a pistol caliber rifle, which the ATF determined did not need a muzzle brake to function effectively." *Id.* Moreover, ATF found that plaintiff's monolithic baffle core "included expansion chambers and was considerably larger than the muzzle brakes that are already available for sale." Add. 16. Nor did it sway the court that the prototype part could theoretically function as a muzzle brake: "[T]he baffle core is a heavy part that probably could function as a doorstop, but that does not mean that it is intended to serve that purpose." Add. 17.

## SUMMARY OF ARGUMENT

Plaintiff manufactures silencers for use by the military and law enforcement. Plaintiff placed one of its silencer parts on the end of a short-barrel rifle and sought to market this weapon to the general public without the constraints imposed by the National Firearms Act. Plaintiff urged ATF that it did not intend the silencer core to be combined with an outer tube and used as a silencer. As the district court correctly recognized, substantial evidence in the record supported ATF's decision to reject this dubious proposition.

In asking this Court to reverse ATF's determination, plaintiff seeks to stand this Court's decision in *United States. v. Crooker*, 608 F.3d 94 (1st Cir. 2010), on its head. The Court in *Crooker* expressed concern that the lack of a subjective-intent element in the definition of "silencer" could transform possession of a potato (which can muffle sound) into a criminal offense. Plaintiff attempts to rely on *Crooker* to argue that because it can hypothesize alternative uses for its silencer core, it must not

8

have intended its firearm part to be used to make a silencer. That is not what *Crooker* holds, and the district court correctly rejected plaintiff's position. ATF is not required to take every manufacturer at its word, especially where, as here, all evidence points to the conclusion that the manufacturer intends to sell a part for use in a silencer.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006). "Because the [Administrative Procedure Act (APA)] standard affords great deference to agency decisionmaking and because the [agency's] action is presumed valid, judicial review, even at the summary judgment stage, is narrow." *Id.* This court may only set aside agency determinations if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2).

## ARGUMENT

I.  **ATF's Determination That Plaintiff Intended Its Prototype Part To Be Used Only as a Silencer Was Supported by Substantial Evidence in the Record.**

After reviewing the prototype firearm and supporting materials submitted by plaintiff, ATF reasonably concluded that plaintiff's prototype part was "intended *only* for use in the assembly or fabrication of a silencer." App. 63 (ATF 825). In reaching this conclusion, ATF applied the appropriate legal standard, and ATF's conclusion was supported by substantial evidence in the administrative record.

A. Federal law defines a "silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24). Federal law thus defines three categories of regulated "silencers": (1) devices that actually function as silencers; (2) combinations of parts intended for assembly into a silencer; and (3) parts intended only for use in constructing a silencer. [4]

In *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010) (per curiam), this Court reviewed a criminal conviction based on possession of a "silencer" falling within the first category, which contains no express intent requirement. The Court held that the government was required to prove that the defendant subjectively intended to possess a silencer. *Id.* at 97. Explaining that "a potato or a soda bottle may, with varying efficacy and varying risk, be used to muffle a firearm shot," this Court concluded that

---

[4] The district court upheld ATF's decision on the ground that plaintiff's prototype part was a "part intended only for" use in constructing a silencer. Although the government made the argument to the district court that ATF also based its decision on the fact that plaintiff's silencer core was a "combination of parts," the court did not consider this argument. *See* App. 52 (ATF 814) (noting that, when combined with an outer tube, the baffle core and the tube are "parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer"); *see also* App. 63 (ATF 825). If this Court were to conclude that ATF's determination that plaintiff's prototype part was intended solely for use in assembling a silencer was not adequately supported, the appropriate course would be to remand to the district court for it to consider ATF's alternative ground for its classification decision.

the statute required "something more than a potential for adaptation and knowledge of it." *Id.*

B. Consistent with this Court's holding in *Crooker*, ATF explained in its classification decision that "[w]hen classifying a part as a firearm silencer, the statute imposes an intent requirement." App. 52 (ATF 814). Applying this legal standard, ATF reasonably rejected plaintiff's unsupported assertion that it did not intend its firearm part to be used as a silencer, but rather as a muzzle brake to reduce recoil.

As ATF correctly recognized in its decision, the objective evidence in the record undermines plaintiff's contention that it intended its prototype part to be used as a muzzle brake, and not to form a silencer. As an initial matter, the part attached to plaintiff's short-barreled rifle is identical to the item attached to plaintiff's machine gun, which plaintiff admits is a silencer. App. 62 (ATF 824). Significantly, the items have the same item number, *see* App. 90-92 (ATF852-54), and both are identified on an invoice as a "silencer." App. 93, 94, 116. This leaves little doubt that plaintiff intended the two parts to be used in the same way.

Not only is the part plaintiff submitted to ATF identical to its own silencer core, the part has all of the design features of a silencer core. *See* App. 202-203. Although plaintiff argues that the baffles in its part allow it to function as a muzzle brake, plaintiff in fact intended the baffles to function as part of a firearm silencer. As ATF has explained, a monolithic baffle core is an internal silencer part consisting of a series of baffles that, when combined with an outer tube to create expansion

11

chambers, "aid[s] in diverting and capturing hot gases created by the burning of propellant powder." App. 56 (ATF 818). This diversion of hot gas muffles the sound emitted when the weapon is fired. Plaintiff's prototype part consists of a tube containing progressively spaced baffles, and, when assembled with an outer tube, will form expansion chambers to create a functional silencer. App. 59-60 (ATF 821-22). And plaintiff's prototype part is designed to be encased, as shown by its threading at the forward end to receive an end cap, and by the ledge or shoulder at the back of the tube against which an outer tube would be pressed to create a gas seal. App. 60 (ATF 822); *see* App. 248 ("Imminent Threat Solutions has an image of the suppressor can next to the MPX-C barrel . . . the threading at the end of the muzzle brake is plain as day.").

As ATF explained, plaintiff's firearm part is therefore a classic monolithic baffle silencer core, which is obvious when one compares the part to other monolithic baffle cores, as ATF did. App. 58-59 (ATF 820-21); *see also* App. 171-82 (ATF 265-76) (patents for silencers); App. 217-45 (sound suppressor patents); App. 246-47. Even a cursory glance at page 203 of the Appendix, reproduced below, demonstrates that plaintiff's part is designed to function as part of a silencer and not as a muzzle brake. App. 202-03.



The SIG submission (center); a sampling of muzzle brakes (left); and monolithic baffle cores (right).
...te muzzle brake for largest .50 BMG caliber (far left); and silencer core for smallest .22 LR caliber (far right).

ATF properly rejected plaintiff's assertion that it intended its part to function as a muzzle brake. Conventional muzzle brakes reduce recoil and counteract muzzle rise by redirecting propellant gases. Silencers must be longer than muzzle brakes because greater length is necessary for capturing and dissipating the pressure of propellant gases, which permits increased capture of sound waves and a corresponding greater reduction in sound. App. 59 (ATF 821). Conventional muzzle brakes, on the other hand, are much shorter because additional length is unnecessary to reduce recoil. The blast from a firearm bleeds off quickly, making a muzzle brake

of more than three to four inches superfluous. App. 88 (ATF 850). In addition, conventional muzzle brakes are not meant to be encased and thus do not create large expansion chambers of various sizes, since they generally have uniformly sized openings to allow the gases to escape. Openings to create expansion chambers of various sizes, as seen in plaintiff's prototype part, are unnecessary for a muzzle brake.

The record evidence makes plain that plaintiff's prototype part is not a muzzle brake. Plaintiff's part is 250% larger than the largest muzzle brake, App. 60 (ATF 822), and the industry has recognized the unusual nature of plaintiff's purported "muzzle brake," App. 250 (ATF 722) (article characterizing plaintiff's firearm as "one of the coolest things to be unveiled" and describing the "muzzle brake" as "gigantic"); App. 255 (industry write-up of plaintiff's products, describing the "muzzle brake" as "very large"). Moreover, the prototype part's length to width ratio is much greater than that of conventional muzzle brakes, but consistent with the length of other monolithic baffle core silencers. App. 60 (ATF 822).

Plaintiff's initial submission to ATF further undermines plaintiff's contention that it intended the prototype part to be used as a muzzle brake. When first submitted to ATF for classification, the item contained an extended handguard. As ATF noted, if plaintiff truly intended its prototype part to be used as a muzzle brake, the placement of the handguard would have redirected hot gases onto the shooter's hand, thereby burning the operator. App. 60 (ATF 822); App. 195-96 (image of hot gases). The handguard would have been appropriate, however, if an outer tube were used to

14

encase the silencer core. This evidence directly contradicts plaintiff's submission that it did not intend an outer tube to be used with the part to create a silencer. *See also* App. 250 (industry release: "SIG claims that you could buy a shroud for the brake later . . . a part they will happily sell you down the road."). Plaintiff's later submission to ATF of a different handguard on the prototype firearm demonstrates only that it realized its mistake.

## II.  Plaintiff's Arguments Are Without Merit and Misunderstand Both the District Court's Decision and the Government's Position.

Plaintiff devotes a substantial portion of its brief to arguing against positions not adopted by either the district court or the government. Neither the district court nor the government has asserted that the subjective-intent standard described in *Crooker* does not apply to this case, that an objective, no-intent test should apply (Pl. Br. 28), that "the capable-of-use" test should apply (Pl. Br. 49), that ATF may rely on a "checklist" in determining manufacturer intent (Pl. Br. 16), or that the standards for a civil case are different from those used in interpreting a criminal statute (Pl. Br. 37-46).

This case therefore involves no question of law regarding the interpretation of 18 U.S.C. § 921(a)(24).[5] The only question before this Court is whether ATF's

---

[5] For this reason, plaintiff's extensive discussion of the legislative history surrounding the predecessors to 18 U.S.C. § 921(a)(24) has no bearing on the question before this Court. *See* Pl. Br. 23-27. It is also unclear what significance plaintiff ascribes to legislative history and precedent issued before the inclusion of parts in the

*Continued on next page.*

determination that plaintiff intended its prototype part to be used only as a silencer is supported by substantial evidence. As described above, ATF's classification decision is supported by abundant record evidence.

### A. Plaintiff's reliance on *Crooker* is misplaced.

Plaintiff's primary argument on appeal is that because it can hypothesize non-silencer uses for its prototype part, ATF is required by law to accept plaintiff's stated intent and ignore all evidence to the contrary. Relying on this Court's decision in *Crooker*, plaintiff argues that because its part "accommodates various intended uses, as a matter of law" it cannot be intended only for use as a silencer. Pl. Br. 15.[6] But *Crooker* held no such thing. That case was concerned with whether an object that objectively functioned as a silencer (that is, it could reduce sound) could subject its owner to criminal liability even if the owner did not intend to use the object as a silencer. Relying in part on the fact that any number of objects can fulfill the function of a silencer, including, for example, a potato, this Court held that the statute must contain an element of subjective intent. *Crooker*, 608 F.3d at 97.

definition of "silencer." ATF has never argued that plaintiff's part would satisfy the definition of "silencer" as it existed before 1986.

[6] At page 22 of its brief, plaintiff cites to a colloquy at oral argument in the district court, claiming that ATF made an admission regarding plaintiff's intent. It is clear from the court's question, however, that the ATF attorney was responding to the hypothetical in which "[t]he evidence in the case is absolutely clear that the manufacturer intends this to be used and marketed in two ways." Pl. Br. 22 (quoting Add. 30). As ATF found, and the district court recognized, the record does not match that hypothetical scenario.

A product with multiple possible uses may be intended for only one use, and nothing in *Crooker* calls into question this common-sense proposition. Even plaintiff would concede, one hopes, that if ATF possessed an email expressly stating that plaintiff's only intent was that its customers combine its prototype part with an outer tube and make a functioning silencer, that intent would be dispositive, regardless of other possible uses for the part. ATF correctly recognized in its classification decision that the fact that a manufacturer can identify an "incidental function" its part might serve is not sufficient to demonstrate that the manufacturer, in fact, intended its customers to use the part in that way. App. 52 (ATF 814). As ATF explained, "because of its weight and shape, a monolithic baffle core," like the one on plaintiff's firearm, "may be used as a door stop." *Id.* This does not, of course, mean that plaintiff actually intended its customers to use the prototype part as a door stop. As ATF explained in its classification decision, a requirement that it "rely exclusively on a manufacturer's assertion" would lead to the result that federal law could only regulate silencers where a manufacturer admitted they were such and marketed them that way. *Id.*

The cases relied upon by plaintiff only underscore the appropriateness of comparing a manufacturer's stated intent to record evidence of that intent. For example, in *United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996) (cited at Pl. Br. 32), the court did not blindly accept the manufacturer's stated intent that the "he had designed and manufactured the cylinder to be a muzzle brake." Instead, the Seventh

Circuit looked to the function of the "muzzle brake" and determined that this cast doubt on the defendant's "professed intentions." *Id.* The court explained that the conflict between the design features of the alleged "muzzle brake" and the defendant's stated intent constituted sufficient evidence from which a jury could determine, *beyond a reasonable doubt*, that the defendant intended the part to be used as a silencer. *Id.*[7]

### B. Plaintiff's contention that it intended its part to be used for anything other than a silencer is without basis.

Plaintiff's attempt to challenge the record evidence upon which ATF relied is unavailing. As an initial matter, plaintiff appears to misunderstand the district court's discussion of the deference due to ATF. Pl. Br. 48. ATF has not sought—and the district court did not accord—deference for ATF's interpretation of the statute: a question this case does not implicate. The deference due to ATF is that accorded under the APA: this court may only set aside ATF's classification decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2). As this Court has explained, "[b]ecause the APA standard affords great deference to agency

---

[7] Plaintiff's reliance (Pl. Br. 35) on *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014), is misplaced. In *Innovator Enterprises*, the item in question was a complete silencer, and the court held that a completed device must actually decrease sound to be a silencer. This case, by contrast, concerns a silencer part, and there is no requirement that a silencer part reduce sound.

decisionmaking and because the Secretary's action is presumed valid, judicial review, even at the summary judgment stage, is narrow." *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006).

1. As demonstrated above, plaintiff is incorrect in its contention that it submitted "uncontradicted evidence" to ATF that it intended its prototype to be used as a muzzle brake and to extend the length of the rifle barrel. Pl. Br. 47. Indeed, plaintiff wholly fails to rebut the design evidence relied upon by ATF. Instead, plaintiff urges that ATF erred in ignoring the fact that the addition of plaintiff's part served to exempt the short-barreled rifle from regulation under the National Firearms Act by extending the length of the barrel. *See* Pl. Br. 49-54.

But the fact that plaintiff designed its firearm submission to avoid classification as a short barreled rifle under the National Firearms Act does not transform a silencer part into a muzzle brake. Although a permanently attached silencer part may be included in a measurement of barrel length, that part remains a "firearm silencer." Neither the silencer nor the rifle is immune from the National Firearms Act simply because plaintiff decided to attach the silencer to the end of its rifle. The part plaintiff attached to the end of the rifle is subject to the National Firearms Act if plaintiff intended its customers to use the part to construct a silencer. That the silencer core lengthens an otherwise too-short rifle does not automatically exempt it from regulation as a silencer.

19

Accepting such an argument would leave a gaping hole in the statute, and plaintiff does not contend otherwise. Every manufacturer who wished to sell a firearm with an attached silencer core would need only ensure that the silencer core was of a sufficient length to extend a short-barreled rifle into a rifle not regulated by the National Firearms Act.

There is no reason to believe the statute compels such an absurd result. 18 U.S.C. § 921(a)(24). A part is a "silencer" when it is "any part intended only for use" in a completed silencer. Plaintiff asks this Court to read "intended only for use" as concerned with the benefit the manufacturer realizes in adding the part to a firearm. Under plaintiff's theory, a manufacturer's "use" could simply be to make a greater profit or a more aesthetically pleasing firearm. But the "use" to which the statute refers is plainly the use of the firearm operator. Thus what matters to ATF's classification decision is plaintiff's intent with respect to how its customers will use the part, not how the part will allow plaintiff to evade further regulation, make greater profits, or generate industry enthusiasm.

Similarly wide of the mark is plaintiff's contention that the district court should have remanded the suit to ATF for further consideration of plaintiff's argument that the intended use of the prototype part was to extend the length of the rifle barrel. Pl. Br. 51-52. Plaintiff's primary contention throughout the administrative process was that it intended its customers to use the prototype part as a muzzle brake—a contention that ATF reasonably found to be without basis. And plaintiff has provided

20

no reason to question the district court's conclusion that plaintiff did not properly advance its "lengthening" argument before ATF. *See* Pl. Br. 51-52. The very documents relied upon by plaintiff underscore that plaintiff primarily urged that its part was a muzzle brake. *See* Pl. Br. 52 (relying on section heading: "Intent to use the muzzle brake to increase barrel length to 16" or greater to avoid the short-barreled rifle category.").

2. Plaintiff's additional arguments also lack merit. The district court properly relied on the fact that a muzzle brake was unnecessary for the firearm as circumstantial evidence that plaintiff's stated intent was false. Pl. Br. 49. Nor does it affect the analysis to urge that plaintiff's part has no outer cover, and therefore has "no expansion chamber." Pl. Br. 50. This is true, of course, because the part is not a completed, functioning silencer. What ATF found was that the part stood ready to be converted into a silencer with the simple addition of a tube, as shown by the threading on the prototype part, App. 60 (ATF 822), and the extended handguard, App. 60 (ATF 822); App. 195-96 (image of hot gases.

In addition, plaintiff's argument that its submission actually reduces recoil, which ATF recognizes, in no way undermines ATF's classification. Because of the additional weight, all silencers reduce recoil to some extent. *See, e.g.,* App. 163 ("The Thundertrap, like any good suppressor, also significantly reduces perceived recoil."); App. 168 ("A suppressor can also measurably reduce muzzle flash and felt recoil."). As explained, the existence of a hypothetical additional use for plaintiff's prototype

part does not equate to a finding that plaintiff actually intended its customers to use the part in this way.

Finally, plaintiff's explanation of its inclusion of the extended handguard rings hollow. *See* Pl Br. 13, 54. As explained, the handguard first submitted to ATF would have burned an operator's hands if the prototype part were used as a muzzle brake and not encased by a tube to form a silencer. ATF was justified in relying on the first prototype firearm plaintiff submitted as evidence that plaintiff never intended that its prototype part be used as a muzzle brake.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney
General*

DONALD FEITH
  *United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT
  (202) 514-0664
  *Attorneys, Appellate Staff
  Civil Division, Room 7252
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C. 20530-0001*

JANUARY 2016

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 5,513 words, excluding exempt material, according to the count of Microsoft Word.

/s/ Abby C. Wright
ABBY C. WRIGHT
*Counsel for Defendant-Appellee*
abby.wright@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2016, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system and served plaintiff via the same means.


/s/ Abby C. Wright
ABBY C. WRIGHT
*Counsel for Defendant-Appellee*
abby.wright@usdoj.gov