No. 15-2230

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

SIG SAUER, INC.,

Plaintiff-Appellant

v.

THOMAS E. BRANDON,
Deputy Director,
Bureau of Alcohol, Tobacco, Firearms and Explosives,

Defendant-Appellee

_____

Appeal from the U.S. District Court for the
District of New Hampshire, Civil No. 1:14-cv-00147-PB

_____

**REPLY BRIEF FOR APPELLANT SIG SAUER, INC.**

_____

Stephen P. Halbrook
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
protell@aol.com

Mark C. Rouvalis
Kenton J. Villano
McLane Middleton
900 Elm Street
Manchester, NH 03101
(603) 628-1329
mark.rouvalis@mclane.com
kenton.villano@mclane.com

Counsel for Appellant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ..................................................................................... 3

I.  ATF MAKES THE SAME CAPABILITY-OF-USE ARGUMENT
    THAT THIS COURT REJECTED IN *CROOKER* ................................ 3

II.  THE MUZZLE BRAKE'S LENGTH DEMONSTRATES THE INTENT
     TO OFFER A RIFLE WITH A BARREL AT LEAST 16 INCHES LONG ....... 9

III.  ATF'S DECISION THAT SIG INTENDED ITS MUZZLE BRAKE
      "TO BE USED *ONLY* AS A SILENCER" WAS CONTRARY
      TO LAW AND TO THE FACTS IN THE RECORD ......................... 14

IV.  ATF'S OTHER ARGUMENTS LACK MERIT ........................... 22

A.  The Timeline of Sig's Submission of Two Prototype Handguards
    Substantiates Its Intent that the Muzzle Brake
    is Not Intended Only for Use in a Silencer .......................... 22

B.  Sig's Compliance with ATF's Directive to Register the Muzzle Brake
    as a Silencer Does Not Concede Agreement With the Classification ... 24

C.  ATF Did Not – And Could Not – Claim that the Single
    Part at Issue is a "Combination of Parts," Which
    Would Have Obliterated the Single Part Definition ......................... 25

CONCLUSION ............................................................................... 28

CERTIFICATE PURSUANT TO F.R.A.P. 32(a)(7)(B) ......................... 31

i

# TABLE OF AUTHORITIES

**CASES** <span style="float:right"><u>**Page**</u></span>

*Chemehuevi Tribe of Indians v. FPC*, 420 U.S. 395 (1975)....................................16

*Favorito v. Pannell*, 27 F.3d 716 (1st Cir. 1994) ....................................23

*Innovator Enterprises, Inc. v. Jones*, 28 F. Supp.3d 14 (D.D.C. 2014) ....................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

*Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ....................................27

*R & B Transp., LLC v. U.S. Dept. of Labor*, 618 F.3d 37 (1st Cir. 2010)...............17

*United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010) ....................................*passim*

*United States v. Oba*, 448 F.2d 892 (9th Cir. 1971) .................................15

*United States v. Syverson*, 90 F.3d 227 (7th Cir. 1996),

 *cert. denied*, 519 U.S. 982 (1996)............................................7

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992) ........................8

*Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*,

447 F.3d 68 (1st Cir. 2006)............................................17, 18

*Wilensky v. Goodyear Tire & Rubber Co.*, 67 F.2d 389 (1st Cir. 1933) ................11

**STATUTES**

5 U.S.C. § 706............................................17

18 U.S.C. § 921(a)(8)............................................9

18 U.S.C. § 921(a)(24).......................................................................................*passim*

26 U.S.C. § 5845(a)(3)...................................................................................9

**REGULATIONS**

27 C.F.R. § 479.84 .........................................................................................23

27 C.F.R. § 479.103 .......................................................................................24

**OTHER AUTHORITIES**

Armor Piercing Ammunition & the Criminal Misuse & Availability of Machineguns & Silencers: Hearings on H.R. 641 & Related Bills Before the Subcomm. on Crime, H. Comm. of the Judiciary, 98th Cong., 1st Sess. (1984) ............................................................................... 18-19

Cong. Rec.......................................................................................................16

H.R. 945 (1986) ............................................................................................16

H.R. 4332 (1986) ..........................................................................................16

## SUMMARY OF ARGUMENT

This case concerns a rifle with a muzzle brake that is intended to reduce recoil, to extend the barrel to the legal minimum of 16 inches, and to fire with safe pressures. The muzzle brake causes a slight increase in noise when the rifle is discharged. That is the configuration in which Sig Sauer would sell it and in which it would be used by consumers who buy it and make no modifications. Consumers who wish to go through the legal process to do so may purchase a serial-numbered outer tube and end cap, and assemble a silencer which would be registered with ATF. As a matter of law, the muzzle brake is not a "part intended only for use" in the assembly of a silencer as defined in 18 U.S.C. § 921(a)(24).

*United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010) (*per curiam*), held that an airgun silencer was not intended to be for a firearm even though it could be attached to a firearm with an adaptor. ATF seeks to apply the same theory of capacity-for-adaptation rejected by *Crooker* to the muzzle brake here that is far more removed from adaptation to use as a silencer than was the complete airgun silencer in *Crooker*.

The length of the muzzle brake is intended to extend the barrel to the minimum 16 inches to avoid restrictions on rifles with barrels under 16 inches. The entire length of the muzzle brake enhances its use in reducing recoil. That it is

longer than other muzzle brakes in no way implies that it is "intended only for use" in a silencer.

ATF's assertion that Sig intended its muzzle brake "to be used only as a silencer" is contrary to law and to the facts in the record. Sig's intent to sell the rifle with just the muzzle brake, and the purchase in that configuration by consumers, demonstrates that the muzzle brake is not "intended only for use" in assembly of a silencer. If intended "only" for such use, the rifle would simply be sold with a registered silencer, and consumers would buy it only in that configuration. ATF's results-driven position would read "only" out of the definition, and its appeal to deference would allow it simply to invent facts in the application of a criminal statute.

ATF's other catchall arguments lack merit. The timeline of Sig's submission of two prototype handguards substantiates its intent that the muzzle brake is not intended only for use in a silencer. Sig's compliance with ATF's directive to register the muzzle brake as a silencer, and its reflection of that on invoices, does not imply agreement with the classification. Finally, ATF never claimed that the muzzle brake at issue, which is a single part, is a "combination of parts," which would have obliterated the single part definition.

This Court should decide that the muzzle brake at issue is not a firearm silencer and set aside ATF's decision as arbitrary, capricious, otherwise not in accordance with law, and unsupported by substantial evidence.

## ARGUMENT

### I. ATF MAKES THE SAME CAPABILITY-OF-USE ARGUMENT THAT THIS COURT REJECTED IN *CROOKER*

This Court's decision in *United States. v. Crooker*, 608 F.3d 94 (1st Cir. 2010) (*per curiam*), resolves this case in favor of Sig Sauer. In response to Sig's brief, ATF denies having argued the following:

> that the subjective-intent standard described in *Crooker* does not apply to this case, that an objective, no-intent test should apply (Pl. Br. 28), that "the capable-of-use" test should apply (Pl. Br. 49), that ATF may rely on a "checklist" in determining manufacturer intent (Pl. Br. 16), or that the standards for a civil case are different from those used in interpreting a criminal statute (Pl. Br. 37-46).

Brief for Appellee 15 (hereafter "ATF Br."), citing Brief for Appellant as "Pl. Br."

Yet ATF's arguments are premised on each of the above propositions. As in *Crooker*, ATF rejects the statutory requirement that the intended use of the device governs, and seeks to change the test to whether a device is capable of use, with the addition of other parts, in assembly of a silencer. The device is on ATF's "checklist" of parts that automatically determines a manufacturer's intent and the intent of all consumers. The premise that the standards for a civil case are different

from those used in interpreting a criminal statute is implicit in ATF's plea for deference. Yet no hint of deference exists in the Court's words: "To read the statute literally, as we do, is conventional with criminal statutes in order to provide fair notice . . . ." *Crooker*, 608 F.3d at 99.

ATF devotes a mere three paragraphs in its argument to an obligatory but superficial mention of *Crooker*. ATF Br. 8-9, 10-11, 16. Sig presented a detailed analysis of *Crooker*. Pl. Br. 27-34. Yet ATF claims that Sig "seeks to stand [*Crooker*] on its head" by arguing that, "because it can hypothesize alternative uses for its silencer core, it must not have intended its firearm part to be used to make a silencer." ATF Br. 8-9. ATF made the same argument in *Crooker* – Mr. Crooker could "hypothesize the alternative use" for his silencer in an airgun, but it was really a firearm silencer because the use of an additional part (the adapter supplied by ATF) could make it so. *See* 608 F.3d at 96-97.

Here, ignoring that § 921(a)(24) says "intended *only*," ATF disregards the fact that the rifle sold with the muzzle brake is capable only of use in reducing recoil and muzzle rise. The other use of the device as a component of a silencer can be realized only if a buyer follows the legal procedure to obtain an outer tube and end cap for the muzzle brake to assemble it as a functional, registered silencer. If Sig Sauer intended the part to be used only to make a silencer, it would simply sell

the rifle with an actual silencer, saving buyers time, money, and delay. ATF's insistence on describing Sig's actual intended use of the device as a muzzle brake as an "alternative use" is misleading. Because the statute uses the word "only," Sig need only demonstrate that it intends the device to be used as something other than a silencer part. Whether that use is primary, secondary, or "alternative" is irrelevant.

ATF paid lip service to *Crooker* by reciting the words that "[w]hen classifying a part as a firearm silencer, the statute imposes an intent requirement." App. 52. ATF claims to have applied this legal standard in rejecting Sig's "unsupported assertion that it did not intend its firearm part to be used as a silencer, but rather as a muzzle brake to reduce recoil." ATF Br. 11. Once again ATF left the word "only" out – the standard is whether Sig intended that the part be used "only" for a silencer, and not for a muzzle brake at all. As *Crooker* stated about an assembled device, the statute required "something more than a potential for adaptation and knowledge of it." 608 F.3d at 97.

ATF concedes that, under *Crooker*, "an object that objectively functioned as a silencer (that is, it could reduce sound)" is not a silencer for a firearm "if the owner did not intend to use the object as a silencer." ATF Br. 16. *Crooker* "held that the government was required to prove that the defendant subjectively intended

to possess a silencer." ATF Br. 10, citing 608 F.3d at 97. By contrast, "the objective evidence" here supposedly proves that Sig intends its device to be used *only* with other parts to make a silencer, and does not intend that the device be used as a muzzle brake at all, because the same part can be used for either. ATF Br. 11.

That dual use is not a surprise, given that muzzle brakes and silencer cores both have baffles. App. 58. No basis exists for ATF's assertion that Sig does not intend that the device function as a muzzle brake, even though it would be sold that way, but intends *only* that the device be used with other parts to assemble a silencer, even though it would not be sold that way. ATF Br. 11.

The device in *Crooker* was identical to an actual silencer for a firearm; ATF only needed to use an adapter to attach it to the barrel of a firearm. 608 F.3d at 95-96. But it was "for" an airgun because it was found with an airgun and no evidence existed that it was "for" a firearm. *Id*. at 97. Mr. Crooker's intent decided the issue, not the adaptivity of the device for use on a firearm. *Id*. at 97-98. But the "objective intent" of the device based on its physical characteristics, according to ATF's argument's there and here, made it a firearm silencer.

This case is a far cry from the facts in *Crooker*. The physical characteristics of the device here are neutral as to how it is used: it can be bought off the shelf and used without any alteration whatever as a rifle with a barrel 16 inches in length and

with an effective muzzle brake, which, incidentally, increases sound. A variety of other devices can be attached to it and used, from a blank firing device to a silencer. Declaration of Sig engineer Ethan Lessard ("EL Dec."), App. 103. For a person who wishes to go through the legal process and obtain the other parts needed to assemble a silencer, such person may do so. These parts would include an outer cover and an end cap. Crooker's device already had an outer cover and end cap, and needed nothing more than an adapter to fit it to a firearm.[1]

As ATF correctly notes, *United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996), did not blindly accept the maker's stated intent that "he had designed and manufactured the cylinder to be a muzzle brake," finding that the function of the device cast doubt on that intent. ATF Br. 17-18. But ATF fails to acknowledge why the court so found. It was because muzzle brakes "usually have slots cut into them," by which they "disperse the hot gases expelled from a gun barrel"; the cylinder in *Syverson* "had no slots," and "would not have done much, if anything, to reduce the recoil of a firearm," but it "did reduce the report of a pistol . . . ." *Id*. at 232. By contrast, the undisputed record shows that the Sig device has slots, disperses hot gases from the barrel, reduces recoil, and increases the report of a firearm.

_____

[1] It was described as "a cylinder made of black metal with a hole running through it, threading that allowed attachment to the muzzle of the airgun and baffles inside." 608 F.3d at 95.

ATF all but ignores *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp.3d 14 (D.D.C. 2014), erroneously asserting that "the item in question was a complete silencer." ATF Br. 18 n.7. In fact, the court found ATF's classification of the item as a silencer to be "'arbitrary and capricious' under the APA, due to ATF's failure to 'articulate a satisfactory explanation' and 'examine the relevant data' . . . ." *Id.* at 30. See Pl. Br. 34-36. ATF found the device to be a silencer without even conducting a sound test, on the basis that it had three of eight features on ATF's list of possible silencer features. *Id.* at 25. The muzzle brake here is even further removed from use as part of a silencer, but ATF claims that it is based on just one feature on its list.

Finally, ATF completely disregards the approach taken in *United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992), which involved a pistol with a short barrel together with a long barrel and a shoulder stock, all of which were interchangeable. A short-barreled rifle is defined in part as "intended to be fired from the shoulder," but the manufacturer did not intend for the shoulder stock to be assembled on the firearm with the short barrel. *Id.* at 507, 509-10 (plurality op.); *id.* at 523 (Scalia, J., concurring). Even though it could be assembled as such, in the absence of any intent to do so the Supreme Court held the combination *not* to be a short-barreled rifle. *Id.* at 517-18.

The Supreme Court did not take ATF's approach here and say that the short barrel was "intended *only* for use in the assembly" of a short-barreled rifle, App. 63, that "incidental effects" like the intent to use the short barrel only with the pistol "do not undermine the manufacturer's demonstrated intent" that the short barrel be used with the shoulder stock, ATF Br. 6, or that the combination of parts was "circumstantial evidence that plaintiff's stated intent was false." ATF Br. 21.

In sum, ATF conducts no real analysis of *Crooker* and virtually disregards any of the other relevant precedents. Sig analyzes these cases at length. Pl. Br. 25, 27-41, and they demonstrate that the device here is not a part "intended only for use" in the assembly of a silencer.

## II. THE MUZZLE BRAKE'S LENGTH DEMONSTRATES THE INTENT TO OFFER A RIFLE WITH A BARREL AT LEAST 16 INCHES LONG

ATF and its predecessor agency have long recognized, and correctly so, that a muzzle brake that is permanently attached to a barrel is included in the measurement of the barrel, thereby allowing a firearm to avoid classification as a short-barreled rifle. Pl. Br. 24. By designing the rifle in this manner, and as expressed in every submission to ATF, Sig expressed its intent that the muzzle brake be used to meet the 16 inch barrel-length requirement set forth in the Gun Control Act (GCA) and the National Firearms Act (NFA).[2] Every consumer who

_____

[2] See 18 U.S.C. § 921(a)(8), 26 U.S.C. § 5845(a)(3).

would purchase the rifle and use it as such would thereby intend to have a rifle with an effective muzzle brake and a barrel at least 16 inches in length. Only the consumer who wished to have a silencer would go through the legal process and purchase the parts to assemble a silencer.

ATF ignored this fundamental reason for the length of the muzzle brake. The district court avoided the issue as somehow not being timely raised, even though it was raised from beginning to end in the administrative process. ATF now excuses its silence by suggesting that Sig "primarily urged that its part was a muzzle brake" but quotes Sig's topic heading showing the muzzle brake and barrel length issues to be insurmountably intertwined: "Intent to use the muzzle brake to increase barrel length to 16" or greater to avoid the short-barreled rifle category." ATF Br. 21, quoting Pl. Br. 52.

Sig's first submission to ATF explained that the permanent attachment of the 9.5" muzzle brake to the 6.5" barrel brought the barrel length to 16" and that the configuration was thus a firearm under the GCA but not the NFA. App. 20. In its initial response, ATF acknowledged receipt of a rifle with the device welded to the barrel. App. 21, 23.[3] ATF correctly notes that the device "extended the rifle

_____

[3] ATF now cites that letter for allegations that are not remotely in the letter or anywhere in the record. ATF claims that the device was "a part that plaintiff had previously used as the center core of the silencers it produced for the military," ATF Br. 4, citing App. 23, and that the device "was identical to the part used by

length" (actually the barrel length) so that it would not be considered a short-barreled rifle. ATF Br. 4 n.2.

ATF asserts that "a muzzle brake was unnecessary for the firearm," disregarding consumer choice and legal constraints on barrel length, and claims that the district court found this lack of necessity "as circumstantial evidence that plaintiff's stated intent was false." ATF Br. 21. The district court did *not* use the term "false," a word that "means something designedly untrue and deceitful . . . ." *Wilensky v. Goodyear Tire & Rubber Co.*, 67 F.2d 389, 390 (1st Cir. 1933) (quoting *Black's Law Dictionary*). Nor does the record reflect that ATF ever suggested that Sig acted other than in good faith.

ATF's above insinuation that Sig's "stated intent was false" is particularly disconcerting here, in that no factual basis exists for the assumption that Sig does not intend that its muzzle brake be used just for a muzzle brake by consumers who purchase it for that very purpose. Possible dual uses of a product do not imply a single use. As the district court asked ATF counsel at oral argument, if the part is "intended for use as a silencer, but it's also intended for use as a muzzle brake, it's not a silencer. . . . You agree?" ATF counsel responded: "Yes, sir." App. 307.

---

plaintiff in manufacturing silencers for the military." ATF Br. 6, citing App. 90-92. Nothing in the record suggests that Sig ever previously used the muzzle brake in silencers it manufactured, whether for the military or any other entity.

ATF states that other muzzle brakes are "much shorter because additional length is unnecessary to reduce recoil," ATF Br. 13, but the length of the Sig device is necessary to meet the barrel length requirement. Even so, a muzzle brake of over three or four inches is not "superfluous" (ATF Br. 13-14) – powder residue can be plainly seen on the entire length of the Sig device, proving its effectiveness in reduction of recoil. EL Dec., App. 101. ATF reproduces a photograph showing that the Sig device is longer than other muzzle brakes, but this does not show that it "is designed to function as part of a silencer and not as a muzzle brake." ATF Br. 12, citing App. 202-03. Sig's video shows vividly that the device substantially reduces recoil and muzzle rise compared to a rifle without the device. EL Dec., App. 100-102, 104.[4]

ATF's claim that a rifle with a 9 mm pistol caliber does "not need a muzzle brake to function effectively," ATF Br. 7-8, citing Add. 15, is also belied by the video showing reduced recoil and muzzle rise. Reflecting consumer choice, other rifles with muzzle brakes that use cartridges far less powerful than 9 mm are on the market. EL Dec., App. 106-107 (.22 caliber rimfire). ATF has no authority to regulate the subject.

As ATF conceded, "the SIG submission possesses some design features of other conventional and progressively designed muzzle brakes on the market . . . ."

---

[4] To view the video, see Administrative Record 883 (Doc. No. 15, Nov. 3, 2014).

App. 59.  Like other muzzle brakes, it has no "openings to create expansion chambers" (ATF Br. 14) because it has no cover and thus no expansion chambers.

ATF quotes an industry source as describing Sig's "muzzle brake" as "very large," ATF Br. 14, citing App. 255.  The source called the rifle "a civilian-legal semiautomatic carbine" with "a 9.5" permanently-attached muzzle brake."  App. 254.  The  large muzzle brake made it "civilian-legal," i.e., having a 16" barrel.  Another industry source referred to "a gigantic muzzle brake out front to bring it up to the required 16" in length."  App. 250.  The industry sources cited by ATF recognized it as a muzzle brake and understood the intent of having it long.

ATF disputes that Sig submitted "uncontradicted evidence" that it intended the device to be used as a muzzle brake and to extend the length of the barrel for legal requirements. ATF Br. 19, citing Pl. Br. 47, 49-54.  But that is exactly how the rifle will be sold and used by consumers unless and until a specific consumer wished to go through the legal process and obtain the parts for a silencer.  ATF argues that Sig's intent "does not transform a silencer part into a muzzle brake," ATF Br. 19, but that begs the question, as it is not a "silencer part" unless intended to be used "only" to assemble a silencer.

ATF concludes that, if Sig is correct, any manufacturer could "sell a firearm with an attached silencer core . . . of a sufficient length" to avoid it being a short-

barreled rifle.  ATF Br. 20.  But the attachment would not be a "silencer core" unless it is intended only for use in assembly of a silencer.  Any muzzle brake can, with the addition of other parts, muffle the report of a firearm.  Pl. Br. 12.  But use of a muzzle brake to reduce recoil and to extend the barrel length complies with all legal requirements, and that is all Sig wishes to do.

ATF failed to address the intended use of a long muzzle brake to meet legal barrel requirements because that would be fatal to its argument that the length of the device expressed an intent to use it only to assemble a silencer.  Sig in no way contended, as ATF suggests, that the district court should have remanded the case to ATF to consider this reason.  Compare ATF Br. 20 with Pl. Br. 51-52.  ATF had already considered the reason when Sig submitted its first request, when Sig sought reconsideration, and yet again when the matter was remanded by the district court for ATF's further review.  By its silence, ATF conceded that it could not rebut it.  No further remand could change the irrebuttable fact that the device is intended to be a muzzle brake that allows the barrel to reach the 16 inch requirement.

### III.  ATF'S DECISION THAT SIG INTENDED ITS MUZZLE BRAKE "TO BE USED *ONLY* AS A SILENCER" WAS CONTRARY TO LAW AND TO THE FACTS IN THE RECORD

ATF begins its brief with the assertion that the NFA regulates "weapons" that are "so amenable to antisocial use by private parties as to justify the strictest

regulation."  ATF Br. 2, quoting *United States v. Oba*, 448 F.2d 892, 897 (9th Cir.

1971).  The citation failed to reflect that this is from the dissenting opinion.  *Id.* at

895 (Browning, J., dissenting).  Disregarding that a silencer is not a "weapon," the

only issue here is whether the item at issue is a "part intended only for use" in the

assembly or fabrication of a firearm silencer as defined in 18 U.S.C. § 921(a)(24).

If it is a silencer, it is subject to the requirements of the GCA, such as

requiring a serial number, and the NFA, such as requiring registration.  See Pl. Br.

3-4.  Congress thereby recognized legitimate uses for silencers on the part of

persons who comply with those provisions.

This case involves whether the words "any part intended only for use" in

assembly of a silencer can be stretched to mean any part capable of dual uses,

without regard to the actual intent of the maker or purchaser of the part.  The word

"only" is ubiquitous in the definition in § 921(a)(24).  Congress considered two

bills, one with the word "only,"[5] and one without the word "only,"[6] and

overwhelmingly chose the version with "only."[7]

_____

[5] H.R. 945, the Volkmer substitute, included the definition that passed.  132 Cong.
Rec. H1675 (1986) (as proposed), H1700 (as amended), H1754 (as passed).
[6] H.R. 4332, known as the Hughes bill, would have defined a silencer to include a
device for silencing the report of a firearm, "including any part or combination of
parts designed or redesigned and intended for such use with a firearm."  132 Cong.
Rec. H1672 (1986).  The word "only" was conspicuously absent.
[7] 132 Cong. Rec. H1752, 1757.

ATF leaves the word "only" out of its argument in contexts where the statutory definition requires that term.[8] If ATF believes that the statute should be amended to delete the word "only," the matter would be "properly addressed to Congress, not to the courts." *Chemehuevi Tribe of Indians v. FPC*, 420 U.S. 395, 423 (1975).

ATF argues that this case does not involve the interpretation of § 921(a)(24), but only involves whether ATF's decision that "plaintiff intended its prototype part to be used only as a silencer is supported by substantial evidence." ATF Br. 15-16. But the Administrative Procedure Act provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. "The reviewing court shall – . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "(E) unsupported by substantial evidence . . . ." *Id.* This Court's review is thus not limited to whether ATF's decision was unsupported by substantial evidence.

Even if this case is limited to whether ATF's decision was unsupported by substantial evidence, not a scintilla of evidence exists that the muzzle brake here is

---

[8] *E.g.*: "Plaintiff urged ATF that it did not intend the silencer core to be combined [**only**] with an outer tube and used as a silencer." ATF Br. 8 (bracketed item added).

intended "only" for use in assembly of a silencer. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *R & B Transp., LLC v. U.S. Dept. of Labor*, 618 F.3d 37, 44 (1st Cir. 2010) (citations omitted). ATF's "suspicion" that Sig intends that its muzzle brake will be used "only" to assemble silencers and that every customer would intend the same is entirely unfounded.

Deference is not accorded to an agency in the interpretation or application of a criminal statute, which has the same meaning in a civil context. See Pl. Br. 37-42. Nor is deference due where the meaning of a statute is clear, or where an agency issues an opinion letter or a classification. *Id*. at 42-46. ATF fails to respond to those points, and weakly relies on *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (ATF Br. 9), an inapposite case involving the validity of regulations that Congress explicitly directed the agency to promulgate. 447 F.3d at 70-71.

ATF suggests that the legislative background and precedents decided before enactment of the current definition by the Firearm Owners' Protection Act in 1986 have no bearing on the issues here. ATF Br. 15 n.5. However, these sources show the continued vitality of standards of intent in general and the consistent

recognition by Congress, the courts, and ATF itself that muzzle brakes are not silencers. See Pl. Br. 23-26. Highlights of that history include the recognition by ATF's predecessor agency that a muzzle brake could lengthen a barrel to keep it out of the short-barreled rifle classification; judicial decisions that such devices were not silencers; and the agreement by the House sponsor of the 1986 legislation that the new definition of silencer did not apply to a muzzle brake. *Id*.

However, ATF would rely on its own "legislative history" by reference to two witnesses in a subcommittee hearing on bills that did not even involve silencers. ATF attributes the enactment of the definition in § 921(a)(24) in 1986 to the witness comments that one could buy aluminum tubing from one source and other parts from another source, and assemble a sound suppressor from the parts.[9] If anything, this illustrates why Congress would have been careful to adopt the "intended only for use" standard – aluminum tubing has numerous uses.

Sig seeks to offer to consumers a rifle with a barrel at least 16 inches in length that fires safely and has an effective muzzle brake to reduce recoil and muzzle rise. Many consumers will use the rifle exactly as bought. Only a subset of consumers may choose to go through the legal process and obtain the parts

_____

[9] ATF Br. 2-3, citing Armor Piercing Ammunition & the Criminal Misuse & Availability of Machineguns & Silencers: Hearings on H.R. 641 & Related Bills Before the Subcomm. on Crime, H. Comm. of the Judiciary, 98th Congress, 1st Sess. 132 (1984).

needed to assemble a silencer.[10]  No evidence exists for ATF's assertion that the muzzle brake was "intended *only* for use in the assembly or fabrication of a silencer." App. 63.  If that was true, Sig would simply sell the rifle with a complete silencer.

ATF did not dispute that the Sig device works as an effective muzzle brake, and noted that muzzle brakes and silencers have some common features such as baffles.  App. 58.  As ATF noted, "a silencer may be produced from a conventional muzzle brake when other parts are added . . . ." App. 56.  Not surprisingly, the muzzle brake here may also be combined with an outer cover and end cap to assemble a silencer.

ATF argues that "incidental effects, such as reducing recoil, do not undermine the manufacturer's demonstrated intent that a part be combined with an outer tube for use as a silencer."  ATF Br. 6, citing App. 52.  But reduction of recoil is the *only* effect of the rifle with the device by itself.  That is the way the rifle would be sold.  It would be up to the consumer to use the rifle as is or to go

---

[10] Sig's second submission to ATF advised, App. 31:

> Sig Sauer recognizes that if it wishes to make outer sleeves and aggregate them with the device in question, then a "making" of a silencer would occur. If Sig Sauer begins marketing the sleeves and devices as a kit, the company will report the manufacture of the silencers on ATF Forms 2 and transfer them in accordance with the law. Sig Sauer will also advise customers who purchase the muzzle brakes that later acquiring outer sleeves will result in making an NFA firearm that must comply with the law and regulations.

through the legal process to obtain the outer tube and assemble a silencer. Only in that limited circumstance, where the owner actually assembled a silencer, would reduction of recoil be an "incidental effect."

The district court repeated ATF's argument that "it was not obligated to defer to a manufacturer's statement of intention when that statement is contradicted by objective evidence." ATF Br. 7, citing Add. 13. Yet the objective evidence is that Sig would sell the rifle just with the device. If Sig intended to sell a rifle with a silencer, it would go through the legal procedures and do just that.

ATF states that the device "consists of a tube containing progressively spaced baffles," ATF Br. 12, but concedes that it has "some design features of other conventional and progressively designed muzzle brakes on the market . . . ." App. 59. ATF adds that "when assembled with an outer tube" – that should be, *if and when* so assembled – a silencer would result. ATF Br. 12. But that is true of any muzzle brake, as both ATF's and Sig's tests of muzzle brakes covered by radiator hoses demonstrated. EL Dec., App. 108-10.

The Sig device is threaded at the end, but threading is neutral as to what, if anything, is attached. Attachment of a tube and end cap to assemble a silencer, as ATF suggests (ATF Br. 12), is only one option. The threading can also

accommodate an extended muzzle brake, flash suppressor, compensator, or blank firing adapter.  EL Dec., App. 103.

At oral argument, ATF counsel conceded that a device marketed in two ways – as a muzzle brake and as a part to use in a silencer – would not be intended only for use in assembly of a silencer.  Pl. Br. 22, citing Add. 30.  ATF responds that this was only a "hypothetical," ATF Br. 16 n.6, even though it fits this case.  As ATF counsel went on to admit, none of ATF's responses in this case say "that this part does not function as a muzzle brake . . . ."  Add. 31.

ATF asserts that Sig never "intended its part to be used for anything other than a silencer," and then asks this Court to defer to this utterly counter-factual assertion.  ATF Br. 18.  Yet it goes on to admit that "ATF recognizes" that the Sig device "actually reduces recoil . . . ."  ATF Br. 21.  It then claims that this "hypothetical additional use" for the device does not mean "that plaintiff actually intended its customers to use the part in this way."  *Id*. at 21-22.

A rifle sold with the muzzle brake and nothing more, in and of itself, cannot be "intended only for use" in assembling a silencer, as applied to the intent of the manufacturer and the intent of the consumer.  ATF states that what counts is "plaintiff's intent with respect to how its customers will use the part . . . ."  ATF Br. 20.  Sig has demonstrated that intent by seeking to offer a rifle with just a

muzzle brake, leaving it to consumers to use it as is or to go through the legal procedures and buy a complete silencer.

## IV.  ATF'S OTHER ARGUMENTS LACK MERIT

### A.  The Timeline of Sig's Submission of Two Prototype Handguards Substantiates Its Intent that the Muzzle Brake is Not Intended Only for Use in a Silencer

The handguard on the first prototype rifle sample sent to ATF was longer than would be appropriate because a shorter handguard was unavailable at the time.  The second sample sent later had the correct, shorter handguard, and it would be used for commercial production.  EL Dec., App. 107-108.[11]  These uncontroverted facts are set forth in the sworn declaration by Sig engineer Ethan Lessard, who added that the design process "entails development of multiple prototypes that change over time." *Id*. at 108.

After examining the correct handguard, ATF speculated that the first handguard somehow indicated an intent that the muzzle brake would be used as a part *only* for assembly of a silencer. App. 60.  ATF now invents the theory that Sig's later submission of the correct handguard "demonstrates only that it realized its mistake," ATF Br. 15, and that it "never intended that its prototype part be used

_____

[11] As the photographs show, the difference in length between the two handguards is minimal.  App. 195.  Either handguard may be held in the rearward position without discomfort, which might result only if the longer handguard is held at its forward position.

as a muzzle brake." *Id*. at 22. But Sig submitted it *before* ATF attributed any significance to the handguard. "[S]pecific facts must be produced in order to put credibility in issue . . . [u]nsupported allegations . . . will not suffice." *Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994) (citation omitted).[12]

ATF argues that the handguard matter "contradicts plaintiff's submission that it did not intend an outer tube to be used with the part to create a silencer." ATF Br. 15. Once again, ATF left out the word "only." ATF refers to an industry release stating that "not only is it a functional muzzle brake. SIG claims that you could buy a shroud for the brake later on a Form 4 (as a registered silencer)[13] that slots over it to turn it into a silencer – a part they will happily sell you down the road." App. 250. That indicates again that the consumer would have choices, and that the device is not "intended only" for one use or another.

## B. Sig's Compliance with ATF's Directive to Register the Muzzle Brake as a Silencer Does Not Concede Agreement With the Classification

The matter in controversy arose when Sig sought ATF's "confirmation that in its current state the device affixed to the forward end of the barrel is a muzzle brake and is not a silencer." App. 20. ATF opined that the device is a silencer, noted that it was returning it, and instructed: "Upon receipt, you must register this

---

[12] "[A] *bare assertion* that the opposing party's uncontroverted evidence might be disbelieved is insufficient . . . ." *Id*.

[13] A Form 4 is an application to transfer and register a firearm. 27 C.F.R. § 479.84.

silencer no later than the close of the next business day." App. 23. This reflected the requirement that a notice of a silencer manufactured must be "filed by the manufacturer no later than the close of the next business day." 27 C.F.R. § 479.103.

Sig's compliance with ATF's directive was reflected in its internal procedures, including the assignment of the same item number to the muzzle brake as the silencer part and identifying the muzzle brake as a "silencer" on invoices. Sig included such paperwork when it submitted sample devices and firearms to ATF for examination. App. 90-94. ATF now claims that Sig's use of the same item number and use of the term "silencer" on the invoice are admissions that the muzzle brake is actually a silencer. ATF Br. 11.

The above demonstrates nothing more than Sig's meticulous compliance with ATF's directive. Sig's current wording on invoices will be unnecessary should a court rule that the muzzle brake is not a silencer. Declaration of Sig Vice President & General Counsel Steven Shawver, App. 116.

## C. ATF Did Not – And Could Not – Claim that the Single Part at Issue is a "Combination of Parts," Which Would Have Obliterated the Single Part Definition

The definition of a silencer is divided into three parts: (1) a device "for" silencing the report of a firearm, (2) a "combination of parts, designed or

redesigned, and intended for use" in assembling or fabricating a firearm silencer, and (3) a "part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24). ATF decided that the part at issue met definition 3. In a post hoc litigation argument, ATF now suggests that definition 2 may be applicable, and seeks yet another remand if this Court rules against it. ATF Br. 10 n.4. Definition 2 is not applicable, and the very argument would obliterate definition 3.

In its first letter, dated August 26, 2013, ATF concluded that "the submitted sample is a part intended only for use in the assembly or fabrication of a silencer . . . ." App. 23. ATF now claims that in this letter, ATF "explain[ed] that the prototype . . . included a part or combination of parts intended to be assembled into a silencer." ATF Br. 4-5, citing App. 120.[14] The ATF letter made no such reference to a combination of parts.

ATF repeated that the sample "is a part intended only for use" in assembly of a silencer in its second letter, dated February 21, 2014. App. 39. In its final, undated decision, ATF said that the device is "a part that 1) when combined with an outer tube is designed and intended for use in the assembly or fabrication of a silencer and 2) is intended only for use in the assembly or fabrication of a silencer and, therefore, is a '*firearm silencer*' . . . ." App. 63; see also App. 52. In ATF's

---

[14] The correct citation is App. 23, not App. 120 (which is part of the First Amended Complaint).

view, then, only "*when* combined with an outer tube" would the second, "combination-of-parts" definition apply. Since the item was not combined with the outer tube, it was just "a part," and the issue was whether it was "intended only for use" in a silencer under definition 3.

ATF conceded the same at oral argument, as the following dialogue between the district court and ATF counsel reflects:

> THE COURT: . . . Because you've chosen to rely on only the third section, your decision stands or falls on whether your decision that this was a part intended only for use in the fabrication of a silencer was arbitrary or capricious or otherwise not in accordance with the law?
> MR. RYAN: That is correct.
> THE COURT: I really appreciate your frankness in answering your question.

App. 307-08.[15]

ATF now suggests that, if this Court determines that the decision "was not adequately supported" under definition 3, that it should remand the case to the district court "to consider ATF's alternative ground for its classification decision." ATF Br. 10 n.4. But "the courts may not accept appellate counsel's post hoc rationalizations for agency action . . . . It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor*

---

[15] See also App. 345 ("MR. RYAN: . . . you are correct that ATF did not consider the firearm with the permanently attached [device] as a combination of parts.").

*Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citations omitted).

Finally, it would be frivolous to suggest that a singular "part" can be a plural "combination of parts." Further, definitions 2 and 3 have different standards regarding intent and design, with the most prominent difference being the word "only." Applying definition 2 to a single part would read definition 3 out of the statute.[16] Accordingly, ATF decided solely that the device is "intended only for use" in a silencer, that decision is plainly wrong, and no cause for a remand exists. This Court should determine that the device is a muzzle brake and is not a firearm silencer.

## CONCLUSION

This Court should hold that the device at issue is not a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24), and that ATF's decision that it is such was arbitrary, capricious, and otherwise not in accordance with law. Accordingly the judgment of the district court should be reversed.

---

[16] As the district court asked at oral argument: "How do you make an argument that this is an assembly of parts under the second prong that does not completely subsume within it the third prong?" App. 347.

Respectfully submitted,
Sig Sauer, Inc., Appellant
By counsel

Date: February 8, 2016

/s/ Stephen P. Halbrook
Stephen P. Halbrook
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
protell@aol.com

/s/ Mark C. Rouvalis
Mark C. Rouvalis, NH Bar No. 6565
Kenton J. Villano, NH Bar No. 21220
McLane Middleton
900 Elm Street
Manchester, N.H. 03101
(603) 628-1329
(603) 625-5650 (fax)
mark.rouvalis@mclane.com
kenton.villano@mclane.com

Counsel for Sig Sauer, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was filed by the ECF system and served on all counsel of record electronically as a result thereof on the 8th day of February, 2016.

<u>/s/ Kenton J. Villano</u>
Kenton J. Villano

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## <u>REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.   This brief complies with the requirements of F.R.A.P. 32(a)(7)(B), because this brief contains 6,990 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2010 in 14 point Times New Roman.


<u>/s/ Stephen P. Halbrook</u>
Stephen P. Halbrook

Date: February 8, 2016